UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARTHA SKAGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-00591-SEP |
| | ) |
| MARTIN J. WALSH, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant Martin J. Walsh,[1] Secretary of Labor, U.S. Department of Labor's, Motion for Summary Judgment. Doc. [30]. The Motion has been fully briefed. For the reasons set forth below, the Motion is granted.

### FACTS AND BACKGROUND

Plaintiff Martha Skaggs filed her Amended Complaint against Defendant on October 16, 2020, alleging violations of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, and the Age Discrimination and Employment Act (ADEA), 29 U.S.C. § 1333a(c). Doc. [10] (Plaintiff's First Amended Complaint). Plaintiff alleges that Defendant discriminated against her on the basis of gender in violation of Title VII and on the basis of age in violation of the ADEA. She also contends that Defendant retaliated against her in violation of Title VII after she filed informal and formal complaints of discrimination against Defendant.[2]

Plaintiff worked as an economic assistant for Defendant in the Bureau of Labor Statistics (BLS) from August 18, 2003, until her termination on October 15, 2019. Doc. [38] (Plaintiff's

---

[1] At the time this matter commenced, Eugene Scalia was the Secretary of Labor for the U.S. Department of Labor. On March 23, 2021, Martin J. Walsh was sworn in as the Secretary of Labor and was substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d).

[2] Defendant's Memorandum in Support of the Motion for Summary Judgment also contemplates the possibility of a hostile work environment claim based on Plaintiff's allegations of harassment. Doc. [34] at 19. Because Plaintiff's Amended Complaint does not contain a hostile work environment claim, the Court declines to consider any such claim. *See* Doc. [10]; *see, e.g.*, *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012) (a district court properly refuses to consider allegations that were not pled); *Northern States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) (parties may not manufacture at summary judgment claims that were not pled).

Responses to Defendant's Statement of Uncontroverted Material Facts) ¶ 1; Doc. [10] ¶ 17. As an economic assistant, Plaintiff was responsible for collecting data for the Consumer Price Index (CPI) and the Producer Price Index (PPI). Doc. [38] ¶ 2. More specifically, Plaintiff collected data regarding Commodities and Services (C&S) pricing and initiation and housing pricing and initiation. *Id.* ¶ 9. The CPI is "the nation's most important reflection of inflation," and both the government and private businesses rely on it to help determine important nationwide price points, including employee wages, Social Security benefits, federal civil retirement pensions, eligibility for food stamps and free school lunches. *Id.* ¶¶ 5-7. Thus, it was important for Plaintiff's C&S pricing data collection to be accurate. *Id.*

Plaintiff was required to maintain a certification to collect data for C&S pricing and initiation and housing pricing and initiation. *Id.* ¶ 11. Plaintiff's Performance Management Plan specifically required that her C&S pricing schedules be "routinely free of substantive errors" and informed her that the results of quality control tests and other feedback would be used to determine whether Plaintiff may maintain her certifications. *Id.* ¶ 21. Defendant used two primary quality control tests for CPI data collection assistants: observations and reinterviews. *Id*. ¶¶ 13-18. In an observation, a staff member watches the economic assistant do her work to assess the quality of the data being collected. *Id*. ¶ 15. If the economic assistant passes the observation, then either a field economist or the branch chief conducts a reinterview, where he or she "follow[s] in the footsteps of the original data collector" to confirm the economic assistant's data collection. *Id*. ¶¶ 15-17. If another staff member conducts the reinterview, then the branch chief must certify the results. *Id*. ¶ 17.

If an economic assistant fails on any quality control measure, a Comprehensive Follow-up Plan (CFP) is created to address data quality concerns. *Id*. ¶ 22. At the end of the CFP, an economic assistant is given another quality control test. *Id*. ¶ 24. If the assistant passes the test, then he or she passes the evaluation and completes the certification for that area. *Id*. ¶ 23. If the assistant fails the test, another CFP is created to address why the first attempt was unsuccessful, followed by another quality control test. If the assistant is again unsuccessful, then he or she is given a Performance Improvement Plan (PIP), which is a "formal document" describing to the employee what performance is required to complete the next assessment successfully. *Id*. ¶ 25. A PIP may require the employee to review the data collection manual, review other procedures, engage in discussions with other staff members and/or attend additional trainings. *Id*. ¶ 26. At

the end of the PIP, the economic assistant is required to have a "validation," which includes passing either an observation or reinterview, or both, and thereafter maintaining the certification for the year following the PIP. *Id.* ¶ 27. Defendant maintained a set of tolerances for mistakes made by economic assistants during an observation or a reinterview. *Id.* ¶¶ 32-33. These tolerances applied to all economic assistants working on CPI pricing and set forth a fixed number of errors per quote or procedure which would trigger a failure of the quality control assessments. *See id*. Defendant contends that there was no such tolerance for "substitution errors," *id.* ¶ 35,[3] which involve substituting different products to price when the original product is no longer available, *id.* ¶ 36. A substitution should occur when the exact item the economic assistant previously priced is no longer available. *Id.* ¶ 36. Leaving an otherwise-eligible item out of the substitution selection process can affect the strength of the CPI. *Id.* ¶ 38.

Plaintiff was first placed on a CFP in December 2016 following a substitution error. *Id.* ¶ 41. Plaintiff passed the observation that followed the CFP in February 2017. *Id.* ¶ 42. In

---

[3] Plaintiff denies that no substitution errors were ever tolerated. *See* Doc. [38] ¶ 35. Additionally, Plaintiff denies that she failed reinterviews in August 2017 and August 2018. *See infra* notes 4 and 6; Doc. [38] ¶¶ 43, 51. Plaintiff provides no evidence to support those denials other than her own testimony. *See* Doc. [38] ¶ 35 (citing Ex. A at 102:12-102:25) (Plaintiff asserting that substitution errors are subjective and were not enforced uniformly); Doc. [37] ¶ 1 (citing [Doc. 32-1] Ex. A at 100:20-25-101:1-2) (Plaintiff asserting that she believes she collected data accurately and routinely free of substantive errors); Doc. [38] ¶ 43 (citing Doc. [32-1] Ex. A at 22:9-78:25) (Plaintiff denying that she failed the August 2017 C&S pricing reinterview); *id.* ¶ 51 (citing Doc. [32-1] Ex. A at 69:9-69:12) (Plaintiff denying that she failed the August 2018 C&S pricing reinterview). In light of the evidence adduced by Defendant, Plaintiff's testimony alone is insufficient to create a genuine dispute as to either of the reinterviews or whether Defendant tolerated substitution errors. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citing *Dombrowksi v. Eastland*, 387 U.S. 82, 84 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1986)) (evidence that is "merely colorable" or "not significantly probative" is not sufficient to create a genuine issue for trial); *Kieran v. Home Capital, Inc.*, 858 F.2d 1127, 1132 (8th Cir. 2017) (citing *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015)) ("[I]t is black letter summary judgment law that a conclusory, self-serving affidavit will not defeat an otherwise meritorious summary judgment motion."); *see, e.g.*, Doc. [38] ¶¶ 106-07 (Plaintiff admitting that she is not aware of any other employees that made substitution errors and that the Notice of Proposed Removal indicated that substitution errors are not permitted); *id.* ¶ 109 (undisputed testimony that it is impossible for Plaintiff to know after-the-fact that she priced items correctly); Doc. [32-4] Ex. D at 119:16-23 (Mr. Stuecheli's deposition testimony that Plaintiff failed the August 2017 and August 2018 reinterviews); Doc. [32-7] Ex. G (records of Plaintiff's individual scores and follow-up training showing that she failed an activity for certification maintenance on August 20, 2017); and Doc. [32-8] Ex. H (records of the CFP Plaintiff was placed on following the August 2018 failure). Moreover, Defendant has made a sufficient showing of legitimate performance concerns without the disputed errors. *See infra* Section I.B; *see, e.g.*, Doc. [38] ¶¶ 41, 45, 57.

3

August 2017, Plaintiff was placed on another CFP after failing a C&S pricing reinterview.[4] *Id*. ¶ 43. Once Plaintiff was placed on that CFP, she and Eric Stuecheli, a supervisor branch chief and one of her supervisors, discussed steps Plaintiff needed to take in the future in order to successfully complete her assessments, including when to correct and when to substitute items. *Id*. ¶ 44. In February 2018, Plaintiff again failed a C&S pricing reinterview and was placed on a third CFP. *Id*. ¶ 45.[5]

During the time that Plaintiff was completing the third CFP, Plaintiff began requesting leave under the Family and Medical Leave Act (FMLA). On April 24, 2018, Plaintiff told Mr. Stuecheli that she planned to use four hours of sick leave to attend her husband's preliminary heart procedure in May of 2018, and that she may need to take additional time off—up to three months—if her husband had to undergo heart surgery. *Id*. ¶ 47. Plaintiff was granted the four hours of leave for the preliminary heart procedure. *Id*. ¶ 48. Around the same time, on April 27, 2018, and May 10, 2018, Mr. Stuecheli informed Plaintiff that her performance in data collection was below an acceptable level. *Id*. ¶¶ 49-50. A few months later, in August 2018, Plaintiff failed another C&S pricing reinterview. *Id.* ¶ 51.[6]

At the beginning of September 2018, Plaintiff made her first report to the Bureau of Labor Statistic's Workplace Equality Compliance Office. *Id.* ¶ 54. On September 24, 2018, Defendant placed Plaintiff on a PIP. *Id.* ¶ 55. Mr. Stuecheli informed her that if she did not pass the evaluation at the end of the PIP, she would lose her certification to collect CPI data. *Id.* ¶ 58. Additionally, the PIP notified Plaintiff that employees who do not pass the evaluation, or who do not maintain the certification for the year following the PIP, may be removed from their positions. *Id.* ¶ 59. The PIP explained the data collection standards that Plaintiff had failed to meet, set forth certain additional assignments for her to complete, and instructed her to meet weekly with Mr. Stuecheli to discuss her progress. *Id.* ¶¶ 69-70. In order to focus on the PIP tasks, Plaintiff requested that her data collection assignments be reduced by 75% from the

---

[4] Plaintiff disputes her alleged failure of the August 2017 reinterview, but she makes an insufficient showing to defeat summary judgment. *See supra* note 3.

[5] Defendant's Statement of Uncontroverted Material Facts characterizes the February 2018 CFP as Plaintiff's second, but it also identifies CFPs in December 2016 and February 2017. Doc. [38] ¶¶ 41, 43, 45. In the interest of clarity, the Court will refer to the February 2018 CFP as Plaintiff's third.

[6] Plaintiff disputes her alleged failure of the August 2018 reinterview, but she makes an insufficient showing to defeat summary judgment. *See supra* note 3.

4

beginning of the PIP until November 15, 2018, and by 50% from November 15 until the conclusion of the PIP. *Id*. ¶¶ 61, 65. Mr. Stuecheli agreed to the reduction and reassigned Plaintiff's PPI schedules to himself and Tod Campbell, two men who are younger than Plaintiff. *Id*. ¶ 63. Throughout the 120-day PIP period, Plaintiff completed the assignments, trainings, and met weekly with Mr. Stuecheli. *Id*. ¶¶ 70-77.

On January 2, 2019, Plaintiff filed a formal complaint of discrimination.[7] *Id*. ¶ 80. With the PIP set to end on February 20, 2019, Michelle Chapman was chosen to perform the final PIP observation of Plaintiff. *Id.* ¶ 85. Ms. Chapman was told that she was to conduct the observation "by the book" and that Mr. Stuecheli would certify the results after the assessment. *Id.* ¶ 85. On February 11, 2019, Ms. Chapman performed the observation and determined that Plaintiff failed the assessment, which Mr. Stuecheli certified. *Id.* ¶ 90. Because of her failure of the observation, Plaintiff failed the PIP and lost her certification to collect C&S pricing data. *Id.* ¶¶ 91-92. Plaintiff disagrees with the results of her assessment, however, noting that she believes Ms. Chapman authored "false reports" about her and that Ms. Chapman was intentionally designated to perform the observation because she is a woman, which would help Defendant's case in the event of a gender discrimination lawsuit by Plaintiff.[8] *Id*. ¶¶ 88-89.

Plaintiff alleges that, beginning in 2018, the stress she suffered at or because of work made it more difficult to accurately collect data. *Id*. ¶¶ 100-01. She requested and was granted FMLA leave in March and April of 2019. *Id*. ¶¶ 97-98. Plaintiff alleges that obtaining the FMLA time was difficult, and that Mr. Stuecheli harassed her repeatedly for more information

---

[7] In her formal complaint, Plaintiff checked boxes on the standard form indicating that she believed that she was being discriminated against based on age. Doc. [32-1] Ex. A at 167:3-15. In her deposition, however, Plaintiff said that, at the time she filed the complaint, she also believed Defendant may be discriminating against her based on her gender. Specifically, she noted that Defendant "took away [her] assignments . . . and gave them to men" and that she believed that a woman, Michelle Chapman, was intentionally assigned to perform her final observation to disguise any gender discrimination. *Id.* at 166:1-25; 167:1-23.

[8] The allegations regarding Ms. Chapman referred to in Defendant's Statement of Uncontroverted Material Facts (Doc. [32]) and Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts (Doc. [38]) are further described in Plaintiff's deposition (Doc. [32-1] Ex. A). In her deposition, Plaintiff alleges that Ms. Chapman was assigned to her observation "on purpose" by Defendant to "cover themselves." Doc. [32-1] Ex. A at 167:9-23. Plaintiff also claims that the review was "fraudulent" because Ms. Chapman falsely indicated that Plaintiff failed to check in with her manager during the PIP, and because Plaintiff was "[written] up" for mistakes that could not be immediately corrected while she attended her father-in-law's funeral. *Id*. at 169.

5

about her prognosis and more documentation of her need for leave. *Id.* ¶¶ 94-95; Doc. [32-1] Ex. A (Plaintiff's Deposition Transcript) at 205:1-25; 206:1-17). Mr. Stuecheli repeatedly called her about her FMLA paperwork during an appointment with her psychiatrist and at her father-in-law's funeral. *Id.* ¶¶ 93-95. According to Plaintiff, Mr. Stuecheli knew where she was at the time. Doc. [32-1] Ex. A at 206:1-18.

On June 25, 2019, Mr. Stuecheli issued Plaintiff a Notice of Proposed Removal. Doc. [32-2]. The Notice indicated that the reason for removal was Plaintiff's "unacceptable performance" during the PIP period from October 17, 2018, through February 20, 2019. Doc. [38] ¶ 103. The Notice also referenced the failed reinterviews in August 2017, February 2018, and August 2019, as well as the failed observation in February 2019, and the fact that Plaintiff had exceeded the allowable number of errors in her C&S pricing observation work. *Id.* ¶¶ 104-05, 107. Finally, the Notice stated that Plaintiff made a substitution error in one of her schedules and indicated that no such errors are permitted. *Id.* ¶ 106.

Plaintiff contends that her termination was not performance-related at all, but rather a result of gender and age discrimination and retaliation by Defendant. Just before she was placed on the PIP, she alleges, Mr. Stuecheli questioned her request for FMLA leave related to her husband's surgery by asking, "[w]hy don't [sic] your husband just get on disability?"[9] *Id.* ¶ 117. Plaintiff also claims that another employee told her that Stanley Suchman, one of her supervisors, called a female employee an "old black crow," seemingly referring to her sex and age. *Id.* ¶ 122. Plaintiff observes that her negative performance reviews generally followed her requests for sick leave and complaints of discrimination, noting that "[i]t's like it always seemed to be reactive to what I was doing, the way the events—one always followed the other." *Id.* ¶ 125; Doc. [32-1] Ex. A at 66:2-12. With respect to age, Plaintiff alleges that Mr. Stuecheli asked her about her plans to retire "in passing," which Plaintiff believed to be a negative comment about her age. Doc. [32-1] Ex. A at 45:10-14. She further alleges that, during her observation, it appeared that Ms. Chapman "might be trying to figure out [her] age" by asking how long Plaintiff had worked for BLS. Doc. [38] ¶ 123.

---

[9] Plaintiff admits that Mr. Stuecheli did not make any other inappropriate comments regarding her need for leave, nor had he, to Plaintiff's knowledge, made any other comments related to an employee's age, gender or Equal Employment Opportunity (EEO) activity. Doc. [38] ¶ 119.

6

Plaintiff's termination took effect on October 15, 2019. *Id.* ¶ 128. On March 30, 2020, Defendant replaced Plaintiff with a woman several years older than Plaintiff. *Id.* ¶ 129.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (quoting *Wingate v. Gage Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008)).

## DISCUSSION

### I. Count I: Title VII Gender Discrimination

The purpose of Title VII is to ensure a workplace environment free of discrimination. *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009). The Act prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." *Winfrey v. City of Forrest City, Ark.*, 882 F.3d 757, 758 (8th Cir. 2018).

When a plaintiff does not present direct evidence of discrimination, the Court "analyze[s] her claim under the *McDonnell Douglas* burden-shifting framework."[10] *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Wells v. SCI*

---

[10] Plaintiff has not presented direct evidence supporting her allegations of gender discrimination. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) ("[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.") (internal quotation marks and citation omitted). She does not appear to contest that fact, as she does not dispute Defendant's application of the *McDonnell Douglas* standard to her claims. *See* Doc. [34] Sections III.A, III.B, III.D.

*Mgmt, L.P.*, 469 F.3d 697, 700 (8th Cir. 2006)); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1993). Under that framework, Plaintiff must first establish the prima facie case of discrimination. "To establish a prima facie case of gender discrimination, [a plaintiff] must demonstrate that: (1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination." *Id.* If Plaintiff can make the prima facie case, the burden then shifts to [D]efendant "to articulate a legitimate, nondiscriminatory reason for its action." *Id.* If Defendant makes that showing, then the burden shifts again and Plaintiff "must show that the proffered nondiscriminatory reason is merely a pretext for unlawful . . . discrimination." *Id.* (quoting *Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)).

### A. Plaintiff cannot make a prima facie case as to two of the four alleged acts of gender discrimination.

Plaintiff identifies four alleged acts of gender discrimination: (1) her supervisors, Mr. Suchman and Mr. Stuecheli, "raised issues about [her] job performance" after she requested FMLA leave for her husband's surgery; (2) the same supervisors charged her with data collection errors when she did not make such errors (including the failures of the CFPs and the PIP); (3) Mr. Stuecheli "improperly and without cause demanded additional documentation from [her] physician, and then interrupted a medical visit with [her] physician to obtain the same information" in March 2019; and (4) her work assignments for the PPI were reassigned to men. Doc. [32-3] (Plaintiff's Response to Defendant's First Interrogatories) at 4-5.

As noted above, one element of a prima facie case for gender discrimination under Title VII is a showing that Plaintiff suffered an "adverse employment action." *Fiero*, 759 F.3d at 878. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dept. of Correctional Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). Minor changes that do not cause a significant disadvantage to an employee do not constitute adverse employment actions for purposes of Title VII. *Id.*

Two of Plaintiff's alleged discriminatory acts fail to meet the definition of "adverse employment action." Even if Mr. Stuecheli harassed Plaintiff about her leave paperwork and

8

inappropriately contacted her during a meeting with her psychiatrist, that does not qualify as an adverse employment action because Plaintiff did not suffer any material employment disadvantage as a result of that conduct. Plaintiff received all the leave she requested in March and April of 2019. Doc. [38] ¶ 98. Likewise, Defendant's decision to transfer some of Plaintiff's job duties to other male employees, specifically those related to the PPI, is not an adverse employment action. The record shows that both parties believed that it was in Plaintiff's best interest to have fewer data collection duties during the PIP period and agreed that "[i]t would have been more difficult than it already was" for Plaintiff to complete her assignments if she retained her normal workload in addition to the PIP assignments. *Id.* ¶¶ 61-65. Plaintiff herself initiated the request for her data collection assignments to be reduced. *Id.* ¶ 61. Although Plaintiff claims that Defendant removed the "fun" assignments from her workload, *id.* ¶ 64, the reallocation of tasks she preferred is not a material employment disadvantage akin to termination, reduced compensation, or harm to her future career prospects. *See Jackman*, 728 F.3d at 804.

Because Plaintiff cannot make a prima facie case for Title VII gender discrimination based on her third or fourth allegedly discriminatory acts, those allegations will not be considered further.[11]

### B. Defendant has produced sufficient evidence of legitimate, nondiscriminatory reasons for Plaintiff's other two alleged acts of gender discrimination to defeat a prima facie case, and Plaintiff has not established pretext.

The Court does not need to consider Plaintiff's prima facie case as to the other two allegedly discriminatory acts—the concerns expressed about her job performance after she requested FMLA leave and the disputed data collection errors—because Defendant has produced sufficient evidence to defeat any such prima facie case. Specifically, Defendant has shown legitimate, nondiscriminatory reasons for Plaintiff's termination and the actions leading up to it, and Plaintiff has not shown that Defendant's putative justification is a pretext for a discriminatory motive. *See Fiero*, 759 F.3d at 878 (quoting *Putnam*, 348 F.3d at 745).

---

[11] Plaintiff's third and fourth allegedly discriminatory acts fail as bases for Plaintiff's ADEA and Title VII retaliation claims for the same reason, and thus the Court will not discuss them in relation to either of those claims either. *See infra* Sections II.A and III (noting that the prima facie cases for age discrimination under the ADEA and Title VII retaliation both similarly require a showing that Plaintiff suffered an "adverse employment event").

Concern about repeated data collection errors and their potential impact on the CPI and inflation is a legitimate, nondiscriminatory reason for Defendant's alleged adverse actions toward Plaintiff, up to and including her termination. Defendant has shown that it followed BLS's typical procedures and policies in determining that Plaintiff's performance did not meet reasonable expectations. Doc. [38] ¶ 13 (Plaintiff admitting that Defendant typically employs observations and reinterviews as quality control tests); *id.* ¶¶ 85, 86 (Plaintiff admitting that Defendant routinely conducted evaluations "by the book"). Using standard assessments, Defendant found that Plaintiff failed three consecutive C&S pricing reinterviews. Doc. [38] ¶ 104. After being placed on multiple CFPs and a PIP, Defendant found that Plaintiff still failed to meet the requisite quality standards, and that she was unsuccessful at her final observation with Ms. Chapman.[12] *Id.* ¶ 108 (citing the Notice of Proposed Removal indicating that Plaintiff's final observation included six pricing action errors). Even taking Plaintiff's allegations that she did not fail some of the disputed assessments as true, Defendant has still submitted sufficient evidence that Plaintiff's performance was unsatisfactory. *See supra* note 3; *see, e.g.*, Doc. [38] ¶ 45 (admitting that Plaintiff failed a C&S pricing reinterview in February 2018); *id.* ¶ 41 (admitting that Plaintiff was placed on CFP after failing a C&S pricing assessment by making a substitution error); *id.* ¶ 57 (admitting that Mr. Stuecheli had had multiple conversations with Plaintiff about her data collection prior to September 2018). Considering the frequency of Plaintiff's errors and the importance of data accuracy, Defendant's documented performance-based concerns provide a legitimate, nondiscriminatory reason for Plaintiff's treatment and termination.

Once Defendant has shown a legitimate, nondiscriminatory reason for the allegedly discriminatory actions, the burden shifts back to Plaintiff "to show a genuine doubt" that Defendant's reasons for Plaintiff's treatment and termination were merely pretextual. *Fiero*, 759 F.3d at 879 (citing *Wierman v. Casey's General Stores*, 638 F.3d 984, 995 (8th Cir. 2011)). "A plaintiff generally may show that a proffered justification is pretextual in two ways." *Id.* (citing *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 873 (8th Cir. 2008)). First, a plaintiff may "rebut the

---

[12] As Defendant points out, it is irrelevant at this stage whether Plaintiff actually failed the various quality control assessments. Rather, the "critical inquiry" in evaluating Defendant's proffered nondiscriminatory reason is "whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 436 (8th Cir. 2016).

factual basis" of the defendant's justification, or second, a plaintiff may show that the employer's proffered justification was not the reason for the adverse treatment, "but rather that the impermissible motive more likely motivated the employer's action." *Id.*  In doing so, a plaintiff must "point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence does not directly contradict or disprove the defendant's articulated reasons for its actions." *Wierman*, 638 F.3d at 995 (cleaned up) (citing *Strate v. Midwest Bankcentre, Inc.*, 398 F.3d 1011, 1021 (8th Cir. 2005)).

Plaintiff makes several allegations in an attempt to show that Defendant's performance-based justifications for her treatment are factitious.  For example, Plaintiff contends that Ms. Chapman was chosen to perform her final observation because she was a woman and Defendant wanted to "cover themselves" in the event of a gender discrimination lawsuit. *See id.* ¶¶ 88-89. Additionally, Plaintiff submits that Mr. Stuecheli asked her "why don't [sic] your husband just get on disability," when she asked for leave, which she perceived as an inappropriate gender-based comment.  Doc. [32] ¶ 117; Doc. [32-1] at 9.  Finally, Plaintiff alleges that another female employee was referred to as an "old black crow" and that the employee believed that comment referred to her gender. Doc. [32] ¶ 122; Doc. [32-1] at 9.

Viewing the factual record in the light most favorable to Plaintiff, it does not "show a genuine doubt" as to whether Defendant's justifications are pretextual. *Fiero*, 759 F.3d at 879 (citing *Fitzgerald*, 521 F.3d at 873).  First, Plaintiff has not produced sufficient evidence to rebut Defendant's factual basis for the contention that her adverse treatment and termination were the result of issues relating to her performance. *See id.* at 878-79.  Plaintiff primarily relies on her own assertions that her data collection was "routinely free of substantive errors," Doc. [37] ¶ 1, but that evidence alone is not sufficient to show a genuine doubt that Defendant's justification is merely pretextual. *See supra* note 3; *Brown v. McDonnell Douglas Corp*, 936 F. Supp. 665, 672 (E.D. Mo. July 31, 1996) (plaintiff's claim that he did not commit infractions his employer attributed to him was not sufficient to find pretext because to hold otherwise would "invite the Court to look over [the defendant's] shoulder and re-evaluate his decisions.").

Second, Plaintiff has not established sufficient doubt as to Defendant's motive. *Fiero,* 759 F.3d at 879 (citing *Fitzgerald*, 521 F.3d at 873).  To do so, Plaintiff must have shown enough evidence such that a "genuine doubt" is raised as to Defendant's proffered justification. *Wierman*, 638 F.3d at 995 (quoting *Strate*, 398 F.3d at 1021).  Plaintiff's testimony that she

11

believes that Ms. Chapman was used by Defendant to "cover up" a gender discrimination does not sufficiently raise doubt as to Defendant's performance concerns, especially considering the documented performance-related issues Plaintiff does not dispute. *See, e.g.*, Doc. [38] ¶ 45 (Plaintiff admitting that she failed a C&S pricing reinterview in February 2018); *id.* ¶ 41 (Plaintiff admitting that she was placed on CFP after failing a C&S pricing assessment by making a substitution error).  Further, isolated comments made by Defendant's staff, even if they may reasonably be construed as gender-based comments, are not sufficient to cast doubt on Defendant's legitimate justification. *See Kriss v. Spring Commc'n Co., Ltd. P'ship*, 58 F.3d 1276, 1282 (8th Cir. 1995) (finding that, even taking allegedly discriminatory comments as true, the plaintiff did not submit sufficient evidence "of conduct or statements by persons involved in the decision-making process" showing that discrimination was "more likely than not a motivating factor in the employer's decision.") (quoting *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993)).

Plaintiff has not provided sufficient evidence to undermine Defendant's legitimate, non-discriminatory reasons for Plaintiff's treatment; nor has she proffered evidence that would permit a reasonable inference that gender discrimination motivated Defendant's decision. *See Barber v. C1 Truck Driver Taining, LLC*, 656 F.3d 782, 795 (8th Cir. 2011).  Therefore, she cannot sustain her gender discrimination claims under Title VII of the Civil Rights Act, and Defendant is entitled to summary judgment as to those claims.

**II.     Count II:  Plaintiff's ADEA Claim**

The ADEA provides, in relevant part:

> All personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies as defined in section 105 of Title 5 . . . shall be made free from any discrimination based on age.

29 U.S.C. § 633a(a).  As with Plaintiff's Title VII claim, when a plaintiff relies on indirect evidence of age discrimination to show violations of the ADEA, the *McDonnell Douglas* burden-shifting framework applies. *See McDonnell Douglas Corp.*, 411 U.S. at 802-03.  A plaintiff must first establish a prime facie case of age discrimination by showing that she: "(1) was at least forty years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) similarly situated employees

outside the class were treated more fairly."[13] *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007). Additionally, "[t]he Supreme Court has recently held that a plaintiff seeking backpay or compensatory damages . . . must show that age was a but-for cause of the employment outcome." *Clayton v. DeJoy*, 2020 WL 6822641, at *9 (E.D. Mo. Nov. 20, 2020) (citing *Babb v. Wilkie*, 140 S. Ct. 1168 (2020)). If the plaintiff establishes the prima facie case, "then the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Rahlf v. Mo-Tech Corp., Inc.*, 642 F.3d 633, 637 (8th Cir. 2011). If the employer can articulate a legitimate reason, then the burden shifts back to the plaintiff "to show that the employer's proffered reason was pretext for discrimination." *Id.*

### A. Plaintiff cannot make a prima facie case as to one of her three remaining alleged acts of age discrimination.

Plaintiff alleges that the same four acts discussed in connection with Plaintiff's Title VII gender discrimination claim also constitute age discrimination. For the reasons discussed in Section I.A, Mr. Stuecheli's requests for additional FMLA paperwork and the reassignment of Plaintiff's PPI duties do not qualify as adverse employment actions and therefore cannot support a prima facie case under the ADEA. Therefore, only the first two of those allegations—concerns expressed about her job performance after she requested FMLA leave and the disputed data collection errors—will be considered.

In addition to those two acts, Plaintiff also alleges that Mr. Stuecheli and Ms. Chapman inquired about her retirement plans, which she believed to be harassment about her age. Specifically, Plaintiff contends that Mr. Stuecheli asked her "in passing" when she planned to retire. Doc. [32-1] Ex. A at 45:10-14. Additionally, she asserts that, during her final observation, Ms. Chapman asked her how long she had worked for the Bureau. Doc. [38] ¶ 123. Plaintiff alleges that those comments were derogatory statements about her age, but she has not submitted any evidence other than conclusory allegations that they caused any tangible or material disadvantage to her employment. As such, those comments do not qualify as adverse employment actions for the purpose of an age discrimination claim under the ADEA. *See*

---

[13] As Defendant points out, the Eighth Circuit has also employed a similar four-factor analysis that includes a showing that Plaintiff "was replaced by an individual who was substantially younger." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). Under that standard, Plaintiff's ADEA claim would still fail because Plaintiff's replacement was nine years older than her. Doc. [38] ¶¶ 1, 129.

*Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005) (applying the "material employment disadvantage" standard to an ADEA claim).

> **B. Defendant has produced sufficient evidence of legitimate, nondiscriminatory reasons for Plaintiff's other two alleged acts of age discrimination to defeat a prima facie case, and Plaintiff has not established pretext.**

The Court again sets aside whether Plaintiff has made out a prima facie case of age discrimination with respect to her remaining allegations of age discrimination, because Defendant's showing of legitimate, nondiscriminatory reasons for Plaintiff's treatment would again defeat any such case. As outlined above, Defendant has introduced extensive evidence of Plaintiff's performance deficiencies and conversations that Mr. Stuecheli had with Plaintiff discussing her performance. *See supra* Section I.B (collecting evidence).

Because Defendant has shown legitimate, nondiscriminatory reasons for Plaintiff's treatment, in order to survive summary judgment, Plaintiff must show that those reasons are a pretext for age discrimination. Again, Plaintiff's primary evidence alleging pretext is her allegation that her data collection was "routinely free of substantive errors." Doc. [37] ¶ 1. For the reasons set forth above, that allegation alone does not establish that Defendant's justification was merely pretextual, especially in light of the evidence that Plaintiff's performance was unsatisfactory that Plaintiff does not dispute. *See supra* Section I.B; *see, e.g.*, Doc. [38] ¶¶ 41, 45, 57. Plaintiff's contention that her termination was pretext for age discrimination is especially unpersuasive in light of Defendant's evidence that an employee older than Plaintiff was hired to replace her duties shortly after her termination. Doc. [38] ¶ 129.

Because Plaintiff has not shown that Defendant's legitimate, nondiscriminatory reasons for her treatment and termination were pretext for age discrimination, Defendant is entitled to summary judgment as to Plaintiff's ADEA claim. *See Baucom*, 428 F.3d at 767.

## III. Count III: Plaintiff's Title VII Retaliation Claim

Plaintiff's final count alleges that Defendant took adverse actions against her in retaliation for her complaints of discrimination.[14] Title VII prohibits employers—including the

---

[14] To the extent that Plaintiff attempts to argue that she was discriminated against in retaliation for her use of leave under the FMLA, the court will not entertain that argument. As set forth in note 2 above, the Court is bound by the allegations presented in Plaintiff's Amended Complaint. *See Pulczinski*, 691 F.3d at 1006; *Northern States Power Co.*, 358 F.3d at 1057. Even if it were not, such a claim would not be actionable because requesting FMLA leave is not a protected activity under Title VII. *Tolston v. Charles*

federal government—from retaliating against employees for engaging in activity protected under Title VII.  42 U.S.C. § 2000e-16(a).  The *McDonnell Douglas* burden-shifting analysis once again applies to Plaintiff's retaliation claim, because she has not presented direct evidence of retaliation.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  Plaintiff must first make a prima facie case of retaliation.  *See Jackson v. UPS, Inc.*, 643 F.3d 1081, 1088 (8th Cir. 2011).  Defendant may defeat the prima facie case by showing a legitimate, non-discriminatory reason for his action, which Plaintiff may then rebut by demonstrating that the proffered rationale was "merely pretext for discrimination." *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

"To establish a prima facie case of retaliatory discrimination, a plaintiff must show: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal connection existed between participation in the protected activity and the adverse employment action."  *Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 713-14 (8th Cir. 2000) (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc), *cert. denied*, 528 U.S. 818 (1999)).  Plaintiff again alleges the same adverse actions as she did with respect to her Title VII gender discrimination claims.  And again, the third and fourth requirements fail to satisfy the second requirement of a prima facie case; only the concerns raised about her job performance and data collection errors could qualify as adverse employment actions for purposes of a Title VII claim.  *See supra* Section I.A; *Baucom*, 428 F.3d at 767.

Plaintiff's remaining allegations fail to satisfy the third requirement of a prima facie case: causation.  Plaintiff alleges that Defendant raised concerns about her job performance and accused her of data collection errors in retaliation for her informal and formal complaints of discrimination.  But Plaintiff has not presented any evidence "that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable factfinder that the harmful adverse action was in retaliation for the protected conduct."  *Sellars v. CRST Expedited, Inc.*, 2021 U.S. App. LEXIS 26930, at *19 (8th Cir. 2021)

---

*Drew Health Ctr.*, 8:16-cv-176, 2017 U.S. Dist. LEXIS 209133, at *23-24 (D. Neb. Dec. 20, 2017) (citing 42 U.S.C § 2000e-3) ("Activities protected from retaliation under Title VII are opposing any unlawful employment practice made unlawful by Title VII, making a charge of discrimination, or testifying, assisting, or participating in an investigation, proceeding, or hearing.").

(internal quotation marks omitted) (quoting *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011)).[15]

Plaintiff filed a complaint with the Workplace Equality Compliance Office (WECO) on September 1, 2018. She then filed an informal complaint on October 3, 2018, and a formal complaint on January 2, 2019. Doc. [32-1] Ex. A at 110-11, 165. Plaintiff does not allege specific facts to support her claim that Defendant took explicit actions in retaliation for those complaints. Rather, she states that, "[e]verything seemed to follow [her] EEO complaints" and that "all [Defendant's] actions seemed to be reacting to other things that I took . . . ." Doc. [32-1] Ex. A at 49:16-20. Such allegations are not sufficient to support a prima facie case for retaliation, especially considering the undisputed evidence that Plaintiff was not meeting the reasonable performance expectations for her position. *See, e.g.*, Doc. [38] ¶¶ 41, 45, 57. Even if Plaintiff suffered adverse employment actions after submitting informal and formal complaints, she has not presented any evidence suggesting that her treatment was in retaliation for her complaints. The fact that Plaintiff's negative performance evaluations and termination occurred after she filed her complaints does not prove a causal relationship between the two occurrences. *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998) ("*Post hoc ergo propter hoc* is not good enough to support a finding of retaliation . . . ."). *Post hoc ergo propter hoc* is especially specious here, given that Plaintiff had already been placed on two CFPs and had a formal discussion with Mr. Stuecheli about her "unacceptable" performance *before* she filed her first complaint. Doc. [32] ¶ 103.

Finally, although close proximity between a plaintiff's complaint of discrimination and adverse employment actions may help establish causation, "timing on its own is not sufficient to show that an employer's non-discriminatory or non-retaliatory reason for an adverse employment action is merely pretext." *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005) (cleaned up) (quoting *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000)).

---

[15] Recently, in *Babb v. Wilkie*, the Supreme Court held that the causation standard, as applied to retaliation claims under the ADEA, requires that age be the "but-for cause of differential treatment in an employment decision but not a but-for cause of the decision itself." *Babb*, 140 S. Ct. at 1178. Neither the Supreme Court nor the Eighth Circuit has applied that principle to Title VII retaliation claims. Rather, current Supreme Court and Eighth Circuit precedent requires that the alleged retaliation be the "but-for cause of the adverse employment action." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346 (2013)). Plaintiff's retaliation claim fails under either standard, because she has not submitted sufficient evidence that her complaints of discrimination were the but-for cause of any adverse employment action or differential treatment.

Even if the Court were to find that the temporal proximity between Plaintiff's complaints and the adverse employment actions were probative of causation, there was also close proximity between the adverse actions and Plaintiff's negative performance evaluations. *See e.g.*, Doc. [38] ¶¶ 51, 55 (Plaintiff was placed on a PIP on September 24, 2018 after allegedly failing the reinterview in August 2018); *id.* ¶¶ 90, 102 (Plaintiff failed the PIP in February 2019 and the Notice of Proposed Removal occurred on June 25, 2019). Considering the timeline as a whole, the fact that Plaintiff experienced adverse employment actions around the time that she submitted her complaints does little to support her retaliation claim.

Plaintiff has not sufficiently shown that retaliation was the but-for cause of Plaintiff's treatment or termination; therefore, Defendant is entitled to summary judgment as to the Title VII retaliation claim.

## CONCLUSION

Plaintiff has failed to make a showing sufficient to defeat summary judgment as to any of her claims. With respect to her gender and age discrimination claims, Plaintiff has not shown that Defendant's documented performance-related concerns were pretext for discrimination. And Plaintiff has failed to make a prima facie case for her retaliation claim. Therefore, Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Martin J. Walsh, Secretary of Labor, U.S. Department of Labor's, Motion for Summary Judgment (Doc. [30]) is **GRANTED.**

A separate Judgment shall accompany this Memorandum and Order.

Dated this 3rd day of November, 2021.

*Sarah E. Pitlyk*
_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE